IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**JUL 3 0 2003**

| | | |
|---|---|---|
| JUAN T. GONZALEZ, SERGIO GONZALES, MARIA L. LLAMES, LINO RUBIO, RAFAEL CRUZ, NICOLAS PEDRO, FELIPE FLORES, and all others similarly situated, | ) ) ) ) ) | |
| | ) | No. 00 C 8062 |
| Plaintiffs, | ) | |
| | ) | Judge Anderson |
| v. | ) | |
| | ) | Magistrate Judge Levin |
| FARMINGTON FOODS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

FILED

JUL 2 2 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.  Introduction

Plaintiffs' lawsuit is based on the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 et seq., the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 et seq., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et al. Plaintiffs' lawsuit is based in part on the fact that Defendant Farmington Foods, Inc. ("Farmington Foods" or "the Employer"), a pork processing plant, refuses to pay its butchers for the time it takes them to put on and take off their safety equipment (commonly referred to as "donning and doffing"), and for sharpening their knives. This lawsuit is also based on the Employer's willful and flagrant violation of state and federal wage payment laws. Discovery in this case has revealed that the Employer has systematically and routinely altered hundreds of employees' time records by changing their starting and ending times in its computer system, thereby reducing the number of hours for which they were paid. In so doing, the Employer has saved itself thousands of

1

dollars off the backs of its workers. Its failure to pay the employees for hundreds of hours of work each year is a travesty that the Court must correct at trial.

## II.    Facts

The Employer processes pork. (Plf. SOF ¶ 7)[1] The employees who use knives and wear safety equipment on the production line are called pace boners and trimmers (they are also referred to as "butchers"). (Plf. SOF ¶ 50) Generally, laborers place meat on a conveyor belt and the butchers cut the meat. (Plf. SOF ¶ 8) Juan Velasquez supervises the butchers and Ismael Venegas supervises the laborers. (Plf. SOF ¶¶ 4-5) The plant typically runs five days per week, and occasionally on Saturdays. (Plf. SOF ¶ 6) Velasquez starts the production line each morning. (Plf. SOF ¶ 9) The employees know the line has started when a bell rings; the bell can be heard throughout the plant. (Plf. SOF ¶ 9) The employees are expected to be at the line with their gear on and ready to start when the bell rings, or face discipline. (Plf. SOF ¶¶ 55, 60-61) At lunch time, the butchers must remove all their safety gear before entering the cafeteria, and put it back on after eating lunch. (Plf. SOF ¶ 60) At the end of the day, the butchers are required to clean their safety equipment. (Plf. SOF ¶ 56)

The butchers must also sharpen their knives on a daily basis. (Plf. SOF ¶¶ 71-73) Although the Employer contracts with a knife-sharpening company to replace the butchers' knives once a week, this is not enough and the butchers are responsible for sharpening their knives each day. (Plf. SOF ¶ 71, 73)

It is undisputed the butchers do not get paid for the amount of time it takes them to put on and take off their safety gear, or to clean their gear. (Plf. SOF ¶ 51) It is also

---

[1] Plaintiffs' will refer to their LR56.1(b)(3) Statement of Facts as "Plf. SOF ¶__" and will refer to the Employer's LR56.1(a) Statement of Facts as "Def. SOF ¶ __".

undisputed the butchers do not get paid for the amount of time it takes them to sharpen their knives. (Plf. SOF ¶ 74) It takes each employee approximately five minutes to sharpen his or her three knives. (Plf. SOF ¶¶ 75-77)

The Employer uses a computer system known as Kronos to electronically track employees' time. (Plf. SOF ¶ 10) An employee uses a card to swipe in and swipe out of a clock connected to the Kronos system. (Plf. SOF ¶ 11) From the Kronos system, the Employer generates a report known as a punch detail report. (Plf. SOF ¶ 13) The punch detail report shows each employee's swipe in and swipe out time, and shows for how many hours and minutes the employee was paid. (Plf. SOF ¶ 14) The employees' paychecks are generated from Kronos. (Plf. SOF ¶ 16)

During discovery in this matter, Plaintiffs learned the Employer has consistently and repeatedly changed their starting and ending times, resulting in Plaintiffs not receiving wages for hundreds of hours of work. (Plf. SOF ¶¶ 27-49) The Employer reduced the working time of both the laborers and the butchers. (Id.)

### III. Analysis

#### A. This Case Is Not Appropriate For Summary Judgment Because The Employer's Conduct Raises Serious Issues Regarding Its Credibility.

This case is not appropriate for resolution on summary judgment because the Employer's conduct during discovery has raised serious questions regarding its credibility. During the deposition of Albert LaValle, Jr., the Employer produced a punch detail report that purportedly reflected employees' times. (Plf. SOF ¶ 17) At the end of discovery, the Employer produced a second set of punch detail reports that were substantially different from the punch detail report it originally produced. (Plf. SOF ¶¶ 18-22) The second set of punch detail reports reflect a series of codes such as "Add

3

Punch" and "Remove Punch" that were not included in the first set of punch detail reports. (Plf. SOF ¶ 22) These codes signify the Employer removed an employee's actual swipe in or swipe out time and replaced it with a different time. (Plf. SOF ¶ 28) In addition, during her first deposition, the payroll manager repeatedly denied altering employees' times. (Plf. SOF ¶¶ 24-25) In her second deposition, she admitted changing the employees' times. (Plf. SOF ¶ 26)

The Employer's conduct certainly gives rise to the inference that the Employer was trying to hide its "true" time records, containing its manually changed times, from Plaintiffs. The Employer's time records lie at the heart of this dispute and serious questions exist as to its credibility. For this reason alone, the Employer's motion should be denied.

**B. The Standard Of Review Regarding Defendant's Motion For Partial Summary Judgment**

Even if this Court addresses the Employer's motion, at the outset it should be noted that all the Employer's arguments are directed at Plaintiffs' donning and doffing claim; none of its arguments address its unlawful systemic and fraudulent alteration of the laborers' time. At most, therefore, the Employer's motion is one for partial summary judgment. Moreover, a complete review of the facts shows the Employer's motion is not well-founded. In ruling on a motion for summary judgment, it is not proper for a court to credit fiercely contested testimony or other evidence. Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383, 386 (7th Cir. 2000). Rather, the Court must, viewing the facts and drawing all reasonable inferences therefrom in favor of the non-moving party, determine whether a reasonable jury could find for the non-moving party. Id. At 386, 388, 390. Here, the Employer's motion should be rejected as a matter of law.

4

**C.      The Employer's Collective Bargaining Agreements With The Union Do Not Bar Plaintiffs' Donning And Doffing Claim.**

The Employer argues its collective bargaining agreements with the United Food and Commercial Workers International Union, Local 546100-A ("the Union") bars Plaintiffs' donning and doffing claim under the FLSA. (Def. SJ Memo., at p.6-9)  This argument should be rejected for several reasons.

**1.      The Employer Is Limited To The Facts Contained In Its LR56.1(a) Statement Of Facts.**

The Employer's argument that its collective bargaining agreements with the Union bars Plaintiffs' donning and doffing claim is factually insufficient and should be rejected for this reason.  The Employer includes only three facts in its LR56.1 Statement of Facts having any relation to its collective bargaining agreements with the Union:  that Plaintiffs are members of the Union, that the Union entered into successive collective bargaining agreements, and that Javier Ramirez, the Union's Director of Organizing, is the primary business agent.  See Def. LR56.1(a)(3) ¶¶ 8, 9.  These facts are the only facts properly before this Court.  The Employer impermissibly inserts a plethora of alleged facts in its memorandum which were not in its Statement of Facts, in violation of LR56.1(a). (Def. SJ Memo., at p.6-9)  All such extraneous facts must be stricken.  (See Plfs.' Mot. to Strike, at p.1-2)

The Employer's violation of Local Rule 56.1 is not a mere technicality to be lightly excused.  The Employer includes broad statements of alleged facts in support of its argument that its collective bargaining agreements with the Union bar Plaintiffs' donning and doffing claim (See, e.g. Def. SJ Memo., at p.7), none of which include **any** citation to any parts of the record.  For example, the Employer states it and the Union

5

have negotiated collective bargaining agreements for over a decade and that they have had a "longstanding history" of negotiating over one of the major issues in this case – compensation to be paid the employees for donning and doffing their safety equipment. (Def. SJ Memo., at p.7)  All such information completely violates Local Rule 56.1.

Were the Court to consider such facts, the Employer would be allowed to completely subvert the purpose of Local Rule 56.1.  Because the Employer has not properly set forth such "facts" in numbered paragraphs, if Plaintiffs were forced to answer these unsupported "facts" sprinkled throughout the Employer's memorandum, it would be forced to comb through the Employer's memorandum, sift out the alleged facts, then construct a responsive Local Rule 56.1(b)(3) statement of facts with supporting documentation.  The Seventh Circuit Court of Appeals has repeatedly upheld strict compliance with Local Rule 56.1(a) to prevent exactly this kind of lawyering.  (See Plfs' Mot. to Strike, at p. 2, and cases cited therein)

The Employer's failure to comply with Local Rule 56.1(a) is even more egregious in light of the fact that the Court has already given the Employer a chance to file a proper LR56.1(a) Statement of Facts.  When the Employer originally filed its Motion for Summary Judgment and Memorandum in support, it included no LR56.1(a) Statement of Facts, prompting Plaintiffs to move to dismiss its motion on that basis alone.  In response, the Employer filed a 3-page, 13-paragraph Statement of Facts.  The Employer should be held to this statement of facts, and should not be given a second bite of the apple by including facts in its memorandum which were not included with proper documentation in its LR56.1(a) Statement of Facts.  The Employer should be limited to the facts properly submitted in its LR56.1(a) Statement of Facts.

2.    **Even If The Court Finds Section 3(o) Applies, The Properly Submitted Facts Show The Employer's Collective Bargaining Agreements With The Union Do Not Bar Plaintiffs' Donning And Doffing Claim.**

The facts properly presented by the Employer show Section 3(o) of the Portal-to-Portal Act is inapplicable.  According to the Employer, it has negotiated two collective bargaining agreements with the Union, spanning the time period from November 1997 to October 2004.  (Def. LR56.1(a) ¶ 8)   The collective bargaining agreements are completely silent regarding whether the butchers should be compensated for the time it takes them to put on, take off and clean their safety gear, and sharpen their knives.

Moreover, there is no evidence of negotiations concerning this issue.   The Employer argues the lack of any provision in the collective bargaining agreements regarding donning and doffing safety gear forms a "custom or practice."  (Def. SJ Memo., at p.8-9)  In short, the Employer is trying to argue that two collective bargaining agreements, both of which are completely silent on this issue, are sufficient to show it is excused from paying wages to the butchers under Section 3(o) of the Portal-to-Portal Act.  In so arguing, the Employer relies on cases such as Arcadi v. Nestle Food Corp., 38 F.3d 672 (2d Cir. 1994), Nardone v. General Motors, 207 F. Supp. 336 (D. N.J. 1962), Hoover v. Wyandotte Chems. Corp., 455 F.2d 387 (5th Cir.), cert. denied, 409 U.S. 847 (1972), and Bejil v. Ethicon, Inc., 269 F.3d 477 (5th Cir. 2001).  In all of these cases, however, the evidence showed the employer and the union had specifically negotiated the issue but failed to reach a resolution.  Here, however, the Employer has not properly presented any such evidence.[2]

---

[2] Even if the Court were to consider the Employer's improperly proffered evidence regarding its attempted negotiations with the Union, the evidence shows, in fact, the

3.    **Section 3(o) Is Inapplicable As A Matter Of Law.**

Even if the Court were to consider the Employer's improperly proffered evidence in support of its argument that the collective bargaining agreements at issue bar Plaintiffs' donning and doffing claim, the Employer's argument must be rejected.  The Employer relies on Section 3(o) of the FLSA, but its express language precludes application of that provision to this case.  Section 3(o) specifically states:

> Hours Worked – In determining for purposes of sections 206 and 207 of this title the hours for which an employee's employed, *there shall be excluded any time spent in changing clothes or washing* at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o) (emphasis added).

Thus, by its express language, Section 3(o) is limited only to activities spent in changing clothes or washing.  Id.; Saunders v. John Morrell & Co., No. C88-4143, 1991 WL 529542 (N.D. Ia. Dec. 24, 1991) (section 203(o) covers the cleaning of the person, not the cleaning of safety equipment).  As the Supreme Court explained in the seminal case Steiner v. Mitchell, 350 U.S. 247, 254 (1956), Section 3(o) was added to the Portal-to-Portal Act to recognize that clothes changing and washing, which are otherwise considered a part of an employee's principal activities and, therefore, compensable, may be expressly excluded from coverage by agreement of the parties.  Moreover, any exceptions under the Portal-to-Portal Act are to be narrowly construed, so as not to

---

parties never negotiated this issue.  On the contrary, the Employer attempted to raise the issue during contract negotiations in late 2000, and the Union refused to bargain over the issue.  Furthermore, the Employer's alleged proposal to pay six minutes for preparatory and concluding activities was extremely close in time to the filing of this lawsuit, giving rise to a host of questions involving credibility issues (e.g., the Employer's motive in making the proposal).  Summary judgment would be an inappropriate vehicle for addressing this issue.

subvert the FLSA's remedial provisions. 29 C.F.R. § 790.2.

Here, the activities for which the butchers seek compensation extend far beyond clothes changing or washing themselves before and after work. Rather, the butchers seek compensation for the time it takes them to don, doff and clean an arsenal of safety armor (Pl. Resp., Def. SOF ¶ 11), and the time it takes them to sharpen their knifes. (Pl. SOF ¶¶ 71-74) These activities do not fall within the language of Section 3(o) of the Portal-to-Portal Act, rendering that section inapplicable.

The Employer attempts to invoke the protections of Section 3(o) of the Portal-to-Portal Act by relying on Leahy v. City of Chicago, 96 F.3d 228 (7th Cir. 1996), cert denied, 520 U.S. 1228 (1997). However, Leahy addresses whether police officers should be paid for their meal period under the FLSA. There is no evidence Section 3(o) was at issue, as the Seventh Circuit never discussed the applicability of this provision. Moreover, in Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981), the Supreme Court held employees could pursue a claim under the FLSA for time spent in performing their pre-trip safety inspections, even though they had unsuccessfully pursued a similar claim under the grievance-handling procedures of their collective bargaining agreement. In so holding, the Supreme Court stated the issue of whether the employees were engaged in a compensable "principal" activity when conducting the inspections is a claim that arises "wholly independently of the collective-bargaining agreement." Barrentine, 450 U.S. at 741 n.19. The Supreme Court's decision in Barrentine controls here, not the Seventh Circuit's decision in Leahy, and Plaintiffs' claims are not barred by any collective bargaining agreements.

9

**D.** **Plaintiffs' Donning And Doffing Claim Is Based On Principal Activities For Which They Should Be Paid.**

The Employer argues Plaintiffs' donning and doffing claim involves preliminary and postliminary activities for which no compensation is owed under Section 4(a) of the Portal-to-Portal Act. See 29 U.S.C. § 254(a). In so arguing, the Employer ignores facts that undisputedly show Plaintiffs' claim is based on principal activities for which they should be paid. In fact, a Supreme Court case, Mitchell v. King Packing Co., 350 U.S. 260 (1956) is directly on point.

In Mitchell, 350 U.S. at 261-62, the employees were butchers who worked at a meat packing plant slaughtering and butchering meat and meat products. The employer refused to pay the butchers for the time they spent in sharpening their knives each day and as a consequence, the butchers filed suit under the FLSA. Id. The Employer argued it was not required to pay the employees to sharpen their knives because the knife sharpening was preliminary and postliminary to their principal activity of slaughtering and butchering and, therefore, was excluded under section 4(a)(1). Id. at 261.

The Supreme Court rejected the employer's argument. The Court stated activities performed before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the FLSA "if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)." Id. The Supreme Court noted each butcher was required to sharpen his own knives outside his scheduled shifts, and each butcher ordinarily sharpened from two to four knives a day. Id. at 262. The Supreme Court held the facts "clearly demonstrate that the knife-sharpening activities of these workmen are an integral part of and indispensable to the various butchering

10

activities for which they were principally employed" for which they must be compensated under the FLSA. Id. at 263. The Supreme Court's holding was consistent with the congressional history of the portal-to-portal amendments to the FLSA. Steiner v. Mitchell, 350 U.S. 247, 256 (1956). Congress specifically mentioned sharpening tools as a principal activity for which the employer must compensate the employee. Id.

The facts in this case mirror those in Mitchell, leading to the inescapable conclusion that the butchers' activities in this case are an integral part of and indispensable to the various butchering activities for which they are principally employed. Although the Employer contracts with a company to provide the butchers with sharpened knives once a week, the employees are required to keep their knives sharpened every day. (Pl. SOF ¶ 71-73) Each employee must sharpen three knives; the employees sharpen their knives before or after work, and are not compensated for this time. (Pl. SOF 74, 76) Thus, just as in Mitchell, this Court must find that Plaintiffs must be compensated for their donning, doffing and knife-sharpening activities. Mitchell, 350 U.S. at 263.

The Employer apparently attempts to avoid the Supreme Court's holding by arguing the butchers are not required to sharpen their knives every day because it provides sharpened knives once a week. (Def. SJ Memo., at p.13-14) Its argument should be rejected for several reasons. First, this argument rests on facts not in the Employer's LR 56.1(a) Statement of Facts and should be rejected for this reason alone. (See Plfs.' Mot. to Strike, at p. 2)

Even if the Court considers the Employer's argument, it should be rejected because it impermissibly construes disputed facts in its favor. Contrary to its assertions,

11

the evidence shows supplying the butchers with sharp knives once a week is not enough –
the employees must sharpen their knives every day. (Plf. SOF ¶ 73) Regardless, even if
the Court were to accept the Employer's contention that the butchers sharpen their knives
due to some unreasonable fetish and not because it is necessary, the Employer's argument
fails. As stated above, the Supreme Court has already held in Mitchell that knife
sharpening is a principal activity; whether the Employer compels the activity is
irrelevant. Lindow v. United States, 738 F.2d 1057, 1060-61 (9th Cir. 1984). An
employer must pay overtime when he "suffers" or "permits" an employee to work in
excess of forty hours. Lindow, 738 F.2d at 1060 (quoting 29 U.S.C. §§ 203(g), 207(a)).
The words "suffer" or "permit" mean "with the knowledge of the employer." Id. There
is no question here the Employer knows the butchers sharpen their knives every day. For
these reasons, the Employer's attempt to avoid the holding of Mitchell should be rejected.

     Moreover, in conjunction with their knife-sharpening duties, the butchers in this
case are required to put on, take off and clean very heavy, bulky safety gear.
Specifically, they wear a helmet, a frock, an arm guard on one arm, a plastic sleeve on one
arm, a belly guard, a plastic apron, and four pairs of gloves (a cotton glove, a plastic glove, a
mesh glove and another plastic glove), and they carry a scabbard, a chida (a piece of steel
used to sharpen the knives), and a hook. (Plf. Resp., Def. SOF ¶ 11) Courts confronted
with employees required to put on, take off, and clean similar equipment have held such
activity constitutes a principal activity for which the employees should be paid. See Reich
v. Monfort, Inc., 144 F.3d 1329, 1332-33 (10th Cir. 1998) (amount of time meat processing
plant employees spent donning, doffing and sanitizing safety equipment was principal
activity for which compensation was owed); Reich v. IBP, Inc., 38 F.3d 1123, 1125 (10th

12

Cir. 1994) (amount of time knife-using employees at beef and pork processing plant spent donning, doffing and sanitizing their protective gear was a principal activity for which compensation was owed; the evidence showed the safety gear was heavy and cumbersome and required physical exertion to put on, take off and clean).

The Employer attempts to avoid the holdings of cases such as Monfort and IBP by relying on cases such as McComb v. Swanson & Sons, 77 F. Supp. 716 (D. Neb. 1948) and Pressley v. Sanderson Farms, Inc., No. Civ.A. H-00-420, 2001 WL 850017 (S.D. Tex. Apr. 23, 2001), aff'd, – F.3d – (5ᵗʰ Cir. 2002) (unpublished). Both cases are inappposite, as they involve the poultry industry, where the employees typically wear less safety equipment than the butchers in this case. See McComb, 77 F. Supp. at 720-21 (employees required to wear uniforms, and a few men wore rubber boots and the women wore hairnets and a plastic apron); Pressley, 2001 WL 850017, at *2 (safety equipment at issue consisted of a smock, apron, cotton and/or rubber gloves, rubber sleeves, a hairnet and earplugs). In fact, the Pressley Court specifically distinguished the poultry industry from the meat packing industry, noting different equipment was at issue. Pressley, 2001 WL 850017, at *3 n.3.; see also Anderson v. Pilgrim's Pride Corp., 147 F. Supp. 2d 556, 561-62 (E.D. Tex. 2001) (discussing the differences in equipment used in the poultry industry versus the meat packing industry), aff'd, – F.3d – (5ᵗʰ Cir. 2002) (unpublished); cf. Monfort, 38 F.3d at 1125-26 (distinguishing between employees who used knives and employees who did not; the non-knife-wielding employees wore little safety gear and the donning and doffing of their gear was not work within the meaning of the FLSA whereas the knife-wielding employees wore heavy and cumbersome equipment, the donning and doffing of which constituted work under the FLSA).

**E.     The Employer's Reference To "Gang Time" Should Be Stricken And In Any Event, Involves Questions Of Fact.**

The Employer apparently attempts to excuse its failure to pay Plaintiffs for thousands of hours of work by stating it pays the employees "gang time." (Def. SJ Memo., p. 14) Its argument should be rejected for several reasons. First, the Employer's Statement of Facts contains no reference to paying Plaintiffs on a "gang time basis" and should be stricken for this reason alone. (See Plfs.' Mot. to Strike, at p. 2)

Second, the Employer's position on this issue alone warrants a trial. The Employer claims in its brief, relying on its production manager's testimony, that it pays the butchers and the laborers on a "gang time" basis, meaning the employees are paid only during the time the line is running. (Def. SJ Memo., p.14) Yet, the Employer's Director of Finance claims only the butchers are paid on a "gang time" basis but the laborers are paid on an hourly basis, using their swipe in and swipe out times. (Plf. SOF ¶ 46) Moreover, the Employer's punch detail reports show systemic changes to **both** the butchers' and laborers' swipe in and swipe out times.

Third, there is no justification in the FLSA for paying employees on a "gang time basis," particularly when all the employees, like Plaintiffs here, are required to be on the line when it starts. See Pressley, 2001 WL 850017 (certifying for trial question whether poultry processing plant violated FLSA when it calculated pay based on "gang time").

**F.     The Amount Of Time For Which Plaintiffs Seek Compensation Is Not *De Minimis***

The Employer argues the total amount of time it has failed to pay Plaintiffs is de minimis. Under the de minimis doctrine, "insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter

14

be precisely recorded for payroll purposes, may be disregarded." 29 C.F.R. § 785.47.
Activities are de minimis only if they involve insubstantial and insignificant periods of
time. Frank v. Wilson & Co., 172 F.2d 712, 716 (7th Cir.) (five minutes held to be de
minimis), cert. denied, 337 U.S. 918 (1949). In addition to examining the amount of time
involved in determining whether the de minimis doctrine applies, courts evaluate: (1) the
practical administrative difficulty of recording the additional time; (2) the size of the
claim in the aggregate; and, (3) whether Plaintiffs perform the work on a regular basis.
Reich v. Monfort, Inc., 144 F.3d 1329, 1333-34 (10th Cir. 1998). Here, an analysis of all
four factors leads to the inescapable conclusion that the de minimis doctrine does not
apply.

As for the first factor, the evidence shows the Employer has systematically
deprived Plaintiffs of an enormous amount of time. The Employer's punch detail reports
disclose that the Employer has habitually and systematically changed Plaintiffs' swipe in
and swipe out times. (Plf. SOF ¶¶ 22, 27-28) Page after page of the punch detail reports
shows multiple "**add punch**" and "**remove punch**" entries which signify the Employer
manually changed Plaintiffs' starting and ending times. (Id.) As a result of the
Employer's manual changes to Plaintiffs' starting and ending times, Plaintiffs have not
been paid for thousands of hours of work. (Plfs. SOF ¶ 40-44)

For example, Plaintiffs' representative analysis shows the Employer's illegal
changes to their swipe in and swipe out times resulted in a loss of 18,223 minutes for a
one-month period in 1999, a loss of 16,856 minutes for a one-month period in 2000, a
loss of 33,609 minutes for a two-month period in 2001, and a loss of 24,170 minutes for a
one-month period in 2002. (Plf. SOF ¶¶ 41-44) This means Plaintiffs were not paid for

15

approximately 218,676 minutes in 1999, 202,272 minutes in 2000, 201,654 in 2001 and 290,040 minutes in 2002.[3] Obviously, illegally failing to pay Plaintiffs for almost a million minutes during a 4-year period is not de minimis.

In addition to illegally manually reducing Plaintiffs' time, the Employer failed to keep track of the amount of time the butchers spend each day donning and doffing their safety equipment, cleaning their safety equipment, and sharpening their knives. Plaintiffs' expert estimates it takes the butchers 12.6 minutes to don and doff their safety equipment. (Def. SOF ¶ 12) In addition, the butchers estimate it takes them five minutes to sharpen their knives. (Plf. SOF ¶¶ 75-77) Thus, the butchers spend a total of **17.6 minutes** per day, putting on and taking off their safety equipment, cleaning their safety equipment, and sharpening their knives, for which the Employer does not pay them. The Employer claims the majority of courts have found daily periods of approximately ten minutes per day to be de minimis as a matter of law. (Def. SJ Memo., at p.15) Contrary to the Employer's statement, this is not an undisputed rule. See, e.g., IBP, 38 F.3d at 1126 ("as little as ten minutes of working time goes beyond the level of *de minimis* and triggers the FLSA"). Even if true, the Employer's argument is irrelevant because the butchers' uncompensated time is almost double that. Seventeen and one-half minutes is not an insubstantial period of time. Monfort, 144 F.3d at 1333-34 (court held ten minutes to don and doff safety equipment was not de minimis); Metzler v. IBP, Inc., 127 F.3d 959 (10th Cir. 1997) (upholding district court's finding that fourteen minutes to don and doff safety equipment was not de minimis); see also Campbell v. HSA Managed Care Sys., Inc., No. 97 C 1622, 1997 WL 610043, at *4 n.5 (N.D. Ill. Sept. 25, 1997) (in light of

---

[3] This analysis does not even represent the entire relevant time period for purposes of Plaintiffs' lawsuit.

public policy in ensuring proper overtime compensation, $315 plus other possible statutory damages was not *de minimis*).

The second factor also favors Plaintiffs. The Employer in this case would not be faced with any practical administrative difficulties in tracking the butchers' time to don and doff their gear, clean their gear and sharpen their knives. The Employer uses a computerized time recording system, known as Kronos, which tracks all the employees' time to the minute. (Plf. SOF ¶¶ 10-12) To allow an employer, capable of tracking an employee's time, to disregard even a small amount of time would produce capricious and unfair results. Cf. Addison v. Huron Stevedoring Corp., 204 F.2d 88, 95 (2d Cir.) (to disregard workweeks for which less than $1 is due, when the employer is capable of calculating such damages, would produce capricious and unfair results), cert. denied, 346 U.S. 877 (1953).

The third and fourth factors also favor Plaintiffs. See Saunders v. John Morrell & Co., No. C88-4143, 1992 WL 531674, at *2 (N.D. Ia. Oct. 14, 1992) (rejecting employer's contention that amount of time spent changing in and out of safety equipment and cleaning it was de minimis; employees had to clean the equipment every day, and with today's technology, employer was capable of tracking the time); Brusstar v. Southeastern Penn. Transp. Auth., Civ. A. No. 85-3773, 1988 WL 85657, at *5 (E.D. Pa. Aug. 17, 1988). Plaintiffs' safety equipment class includes approximately 46 butchers. (Def. SOF ¶ 12) As stated above, every day the butchers spend 17.6 minutes putting on their safety equipment before the beginning of their shift, taking off their safety equipment before lunch, putting on their safety equipment after lunch, taking off their equipment after the shift has ended, cleaning their equipment, and sharpening their knives

17

before or after the shift has ended. This results in a loss, per butcher, of 88 minutes per week, 352 minutes per month, for a total loss of 4,224 minutes per year. To suggest that the de minimis doctrine applies in this case makes a mockery of the FLSA.

**G.      Plaintiffs' State Law Claims Are Not Preempted.**

The Employer argues Plaintiffs' state law claims are preempted by section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. In so arguing, the Employer relies on Lopez v. Smurfit-Stone Container Corp., No. 02 C 7347, 2003 WL 297533 (N.D. Ill. Feb. 10, 2003). However, Lopez is inapplicable to this case because the collective bargaining agreement at issue in Lopez contain vastly different language than the language in the collective bargaining agreements here.

In Lopez, 2003 WL 297533, at *1, unionized employees filed a state court action against their employer, alleging they had not been paid overtime wages. The employees relied on a provision in their collective bargaining agreement that stated the employees were entitled to overtime for "hours worked over eight (8) hours per day *and for any work performed outside a worker's regular shift.*" Id. (emphasis added). As the district court noted, preemption is triggered when a state law claim is "'substantially dependent on an analysis of the terms of the collective bargaining agreement.'" Id. at *2 (quoting Atchley v. Heritage Cable Vision Assocs., 101 F.3d 495, 499 (7th Cir. 1996)). The district court stated the employees' state law claim depended on whether they in fact performed any work "outside" their "regular shifts". Id. at *4. The district court concluded that resolution of this issue necessarily included an interpretation of the contract's phrase, "any work performed outside a worker's regular shift." Id. at *4-5. Therefore, the district court held the employees' state law claims were preempted.

18

However, unlike the contract language at issue in <u>Lopez</u>, the contract clause at issue here is straightforward and involves no interpretation. The two collective bargaining agreements the Employer has submitted state, "all work in excess of eight (8) hours in any one (1) day or forty (40) hours in any one (1) week shall be paid for at one and one-half (1-1/2) times the regular rate of pay." (Def. Exh. 8, 1997 Agreement, at p.2; 2000 Agreement, at p. 8) This language is simple; the Employer must pay an employee time and one-half if the employee works more than eight hours in one day or forty hours in a week. Thus, this Court need not employ any analysis of the collective bargaining agreement to determine Plaintiffs' state law claims. In fact, Plaintiffs' have already performed the simple task of determining when an employee worked more than eight hours in a day or forty hours in a week for which the employee received no compensation. (Plf. SOF ¶ 37) Because no analysis of any collective bargaining agreement is needed, Plaintiffs' state law claims are not preempted and <u>Lopez</u> is inapposite.

**H.    The Employer's Argument Regarding Its Compliance With The FLSA's Recordkeeping Requirements Should Be Rejected.**

The Employer argues it has complied with the FLSA's recordkeeping requirements, yet all of the facts upon which it relies were not included in its LR56.1(a) Statement of Facts. For this reason alone, its argument should be rejected. (<u>See</u> Plfs. Mot. to Strike, at p. 2)

Even if the Court were to consider the Employer's argument, it has not complied with the FLSA's requirements because it has improperly recorded employees' times. By requiring the employees to swipe in after donning their safety equipment and swipe out after doffing their gear, the Employer has failed to properly measure their time, in

violation of the FLSA's recordkeeping requirements. See e.g. Metzler v. IBP, Inc., 127 F.3d 959, 965 (10th Cir. 1997). For this additional reason, its argument should be rejected.

## IV.   Conclusion

For the reasons set forth above, genuine issues of material facts exist and the Employer's motion for summary judgment should be denied and this cause should be set for trial.

Respectfully submitted,

One of Plaintiffs' Attorneys

Dated: July 22, 2003

Beth A. Chukey
Jacobs, Burns, Orlove, Stanton
    & Hernandez
122 S. Michigan Ave., Suite 1720
Chicago, IL 60603